Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000577
26-SEP-2017
08:02 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

EVELYN K. SCHOLES AND EVELYN WONG AS CO-TRUSTEES OF THE
SCHOLES FAMILY TRUST DATED SEPTEMBER 18, 2003,
Plaintiffs-Appellees,
v.
KIYOSHI KAWAGUCHI AND SUNG SOOK KAWAGUCHI,
Defendants-Appellants,

NO. CAAP-15-0000577

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CIVIL NO. 1RC15-1-2486)

SEPTEMBER 26, 2017

FUJISE, PRESIDING JUDGE, LEONARD and GINOZA, JJ.

OPINION OF THE COURT BY GINOZA, J.

Plaintiffs-Appellees Evelyn K. Scholes (**Evelyn Scholes**) and Evelyn Wong (**Wong**) as Co-Trustees of the Scholes Family Trust (collectively **Scholes/Wong**) brought this action in the District Court of the First Circuit, Honolulu Division (**District Court**),[1] seeking to eject Defendants-Appellants Kiyoshi Kawaguchi (**Kiyoshi**) and Sung Sook Kawaguchi (collectively **the Kawaguchis**)

---

[1] The Honorable Michael K. Tanigawa presided.

from property located on Wanaka Street in Honolulu.[2] On July 15, 2015, the District Court entered a Judgment for Possession and a Writ of Possession in favor of Scholes/Wong and against the Kawaguchis.

The Kawaguchis appeal and contend that the District Court erred by: (1) concluding it had jurisdiction and thus denying the Kawaguchis' motion to dismiss or, alternatively, for a stay of the proceedings (hereafter **motion to dismiss**); (2) concluding that a certificate of title for the property conclusively established that title was held by the Scholes Family Trust, regardless of claims asserted by Kiyoshi in a separate action filed in the Circuit Court of the First Circuit (**Circuit Court**); and (3) denying the Kawaguchis' motion for reconsideration and two motions to continue the trial.

For the reasons set forth below, we conclude the Kawaguchis sufficiently demonstrated there was an issue of title regarding the property such that the District Court lacked jurisdiction. We thus vacate the Judgment for Possession and Writ of Possession, and remand to the District Court for dismissal.

## I.  Background

On April 6, 2015, Scholes/Wong filed a Complaint for Ejectment in the District Court against the Kawaguchis alleging, *inter alia*, that: the Scholes Family Trust is the record title owner of the property; the property is registered property in Land Court with Transfer Certificate of Title No. 779,343; a Warranty Deed recorded on November 10, 2005, evidences the conveyance of the property to the Scholes Family Trust; Kiyoshi, son of Evelyn Scholes, has occupied the property since 1980 and the Kawaguchis currently occupy the property but do not pay rent; the Kawaguchis were advised that their occupancy was terminated by letter dated December 3, 2014; and the Kawaguchis have neglected, failed, and refused to vacate the property. Exhibits

---

[2] The record reflects that Evelyn Scholes is the mother of Wong and Kiyoshi, who are apparently half-siblings. Evelyn Scholes was married to Edward Scholes, who is Wong's father and who is now deceased.

attached to the Complaint for Ejectment include: a Short Form Trust, dated September 23, 2014, for the Scholes Family Trust (dated September 18, 2003) naming Evelyn Scholes as Settlor/Co-Trustee and Wong as Co-Trustee; a certificate of title issued on November 10, 2005, which identifies the registered owner of the property as Edward Scholes, Trustee and Evelyn Scholes, Trustee, Trustees of the Scholes Family Trust; and a Warranty Deed recorded on November 10, 2005, which conveyed Edward Scholes and Evelyn Scholes's interest in the property to the Scholes Family Trust.

On April 21, 2015, the Kawaguchis filed the motion to dismiss, pursuant to Hawaii Revised Statutes (HRS) § 604-5(d) (2016).[3] The Kawaguchis asserted that the District Court did not have jurisdiction in this case because title to the property was in question. Attached to the motion was Kiyoshi's affidavit, in which he attested in relevant part:

> I claim title to the [property] that is subject to this ejectment action. I was promised the property by my mother, Plaintiff Evelyn K. Scholes, and her husband Edward A. Scholes, and in reliance upon the agreement made improvements to the property, nearly tripling the size of the house on the property and generating a source of rental income. Exhibit "A" is a true and correct copy of a Verified Complaint, which is being filed in Circuit Court, setting forth the basis for my claim to title to the property.

The verified Circuit Court complaint (Circuit Court complaint)[4] attached to Kiyoshi's affidavit asserted claims by him against

---

[3] HRS § 604-5(d) provides:

§604-5 Civil jurisdiction.

. . .

(d) The district courts shall not have cognizance of real actions, nor actions in which the title to real estate comes in question, nor actions for libel, slander, defamation of character, malicious prosecution, false imprisonment, breach of promise of marriage, or seduction; nor shall they have power to appoint referees in any cause.

[4] The copy of the Circuit Court complaint attached to Kiyoshi's affidavit was unfiled. The Circuit Court complaint was later filed on April 21, 2015, the same day the Kawaguchis' motion to dismiss was filed in District Court. A filed copy of the Circuit Court complaint was thereafter attached to Scholes/Wong's opposition to the Kawaguchis' motion to dismiss. Thus, the District Court had a filed copy of the Circuit Court complaint while considering Kiyoshi's motion to dismiss.

3

Evelyn Scholes, Individually and as Co-Trustee of the restated Scholes Family Trust, and Wong, as Co-Trustee of the restated Scholes Family Trust.[5] Kiyoshi's Circuit Court complaint alleged, *inter alia*, that: sometime after 1980, Kiyoshi made improvements to the property at the request of Evelyn Scholes and Edward Scholes and in reliance on their promise that the property would be given to Kiyoshi in consideration for the improvements; the improvements made by Kiyoshi expanded the size of the home from approximately 900 square feet to nearly 3,000 square feet; Evelyn and Edward Scholes moved to Las Vegas and obtained a loan secured by the property to purchase their Las Vegas home; although Kiyoshi did not pay rent while residing at the property, he screened tenants, rented portions of the home, and remitted rental proceeds to Evelyn Scholes; Kiyoshi also paid for repairs and upkeep of the property, and would not have paid for and made improvements but for the promises that he would be given the property; in 1992, Evelyn Scholes and Edward Scholes transferred the property to Kiyoshi, Evelyn Scholes, and Edward Scholes to hold as joint tenants; in 2003, Evelyn Scholes and Edward Scholes wanted to refinance the debt secured by the property and obtain a mortgage loan solely in their name, and thus the property was transferred back to Evelyn Scholes and Edward Scholes by way of a Warranty Deed recorded on August 29, 2003 (**2003 Warranty Deed**); Kiyoshi did not intend to divest himself of his interest in the property and only intended to accommodate his mother and her husband so that they could refinance the home at a better interest rate; when the property was transferred back to Evelyn Scholes and Edward Scholes in 2003, Kiyoshi did not receive any consideration for his interest in the property; and subsequently, in 2005, Evelyn Scholes and Edward Scholes transferred the property to the Scholes Family Trust by way of a deed recorded on November 10, 2005.

---

[5] The Circuit Court complaint asserts that Edward A. Scholes died on February 16, 2014, and that "[u]pon information and belief, [Wong] became a successor Co-Trustee [of the Scholes Family Trust] upon the death of her father Edward A. Scholes."

Kiyoshi's Circuit Court complaint asserts claims for: breach of contract, equitable lien, unjust enrichment, and breach of fiduciary duty/constructive trust. The Circuit Court complaint seeks, *inter alia*, specific performance requiring conveyance of the property to Kiyoshi, as well as damages.

On June 9, 2015, the District Court filed an "Order Denying Defendants' Motion to Dismiss Complaint For Ejectment" (**Order Denying Motion to Dismiss**) concluding:

> a) that title to the subject property is registered in the Land Court in Plaintiffs' name, which is dispositive; b) that Defendants have failed to raise an issue of title sufficient to oust this court of jurisdiction over the ejectment claim; and c) that Defendants' filing of a Notice of Pendency of Action has no effect to either stay or dismiss the proceedings.

(Emphasis added.)

On June 19, 2015, the Kawaguchis filed a motion for reconsideration of the Order Denying Motion to Dismiss. The motion for reconsideration was denied without a hearing.

The Kawaguchis subsequently filed two motions to continue trial in the District Court. In the first motion, submitted on June 23, 2015, the Kawaguchis pointed to Aames Funding Corp. v. Mores, 107 Hawai'i 95, 110 P.3d 1042 (2005) and argued that the Hawai'i Supreme Court had recognized that a certificate of title could be challenged in cases of fraud to which the party holding title is a party. The Kawaguchis noted that in Aames, the Supreme Court discussed three types of fraud: (1) fraud in the factum; (2) fraud in the inducement; and (3) constructive fraud. Id. at 103, 110 P.3d at 1050. The Kawaguchis further noted that Aames described "constructive fraud" as "characterized by the breach of a fiduciary or confidential relationship." Id. at 104, 110 P.3d at 1051. The Kawaguchis reasserted that Kiyoshi's Circuit Court complaint included a claim for breach of a confidential relationship between Kiyoshi, his mother, and her husband, and that Kiyoshi seeks specific performance requiring conveyance of title to him. This motion to continue trial was denied on June 24, 2015.

In their second motion to continue trial, submitted on June 29, 2015, the Kawaguchis relied upon declarations by their

counsel, Ann C. Kemp (**Kemp**). Kemp attested that through discovery in the Circuit Court action, Kiyoshi had learned that the notary book for the notary who purportedly notarized Kiyoshi's signature on the 2003 Warranty Deed, which transferred the property out of his name, did not actually contain an entry regarding the Warranty Deed. Kemp's declaration again cites to Aames for the proposition that fraud is a valid basis to challenge a certificate of title. Kemp further attested that, based on the recent discovery regarding the notary book, Kiyoshi would be seeking to amend the Circuit Court complaint to allege forgery and that this would be a further basis for the fraud-based claims he was pursuing in the Circuit Court. This second motion to continue trial was denied on June 30, 2015.

The case proceeded to bench trial and on July 15, 2015, the District Court entered the Judgment for Possession and Writ of Possession. The Kawaguchis timely appealed.

## II. Mootness

As an initial matter, this court granted Scholes/Wong's motion to file supplemental briefs as to whether this appeal is moot. In their supplemental brief filed on March 8, 2017, Scholes/Wong argue this appeal is moot based on orders entered by the Circuit Court after this appeal was initiated, which dismiss most of Kiyoshi's claims against them in the Circuit Court action.[6] Scholes/Wong contend that, given the Circuit Court orders, there are no remaining claims that place title to the property in question because the only claims remaining are for

---

[6] Scholes/Wong submit with their supplemental brief a First Amended Complaint filed by Kiyoshi in the Circuit Court on October 20, 2015. In addition to the claims asserted in the original Circuit Court complaint (breach of contract, equitable lien, unjust enrichment, breach of fiduciary duty/constructive trust), the First Amended Complaint added allegations that Kiyoshi did not sign the 2003 Warranty Deed and that "[u]pon information and belief, although the purported signature of [Kiyoshi] on the 2003 Warranty Deed was notarized, the book maintained by the notary who purportedly notarized his signature contains no record of [Kiyoshi's] signature being notarized." The First Amended Complaint asserts additional claims for: rescission of the 2003 Warranty Deed; declaratory relief; and injunctive relief. Like the original Circuit Court complaint, the First Amended Complaint requests specific performance and damages. Scholes/Wong also attach Circuit Court orders which dismiss the claims for breach of fiduciary duty/constructive trust, breach of contract, rescission, declaratory relief, and injunctive relief.

monetary damages.

Under the mootness doctrine:

the suit must remain alive throughout the course of litigation to the moment of final appellate disposition. Its chief purpose is to assure that the adversary system, once set in operation, remains properly fueled. The doctrine seems appropriate where events subsequent to the judgment of the trial court have so affected the relations between the parties that the two conditions for justiciability relevant on appeal--adverse interest and effective remedy--have been compromised.

Hamilton ex rel. Lethem v. Lethem, 119 Hawai'i 1, 5, 193 P.3d 839, 843 (2008) (citation omitted).

The Circuit Court orders that Scholes/Wong rely upon for their mootness argument are interlocutory orders and Scholes/Wong do not assert that a final judgment has been entered in the Circuit Court. Moreover, in opposing the mootness argument, the Kawaguchis assert that Kiyoshi intends to appeal once a final judgment is issued in the Circuit Court action. It is unclear at this time whether Kiyoshi will seek and obtain a stay of any judgment entered in the Circuit Court action pending an appeal. See Rule 62 of the Hawai'i Rules of Civil Procedure.

Given these circumstances, Kiyoshi's claims in the Circuit Court related to a constructive trust, rescission of the 2003 Warranty Deed, and specific performance do not appear to be finally adjudicated such that there is an enforceable judgement as to title to the property. Therefore, this appeal is not moot.

### III. Subject Matter Jurisdiction

The Kawaguchis contend that the District Court erred by entering the Order Denying Motion to Dismiss, because the District Court did not have subject matter jurisdiction pursuant to HRS § 604-5(d) after the Kawaguchis raised a question of title to the property.

In its Order Denying Motion to Dismiss, the District Court concluded, inter alia, that "title to the subject property is registered in the Land Court in Plaintiffs' name, which is dispositive" and "[d]efendants have failed to raise an issue of title sufficient to oust this court of jurisdiction over the ejectment claim[.]"

HRS § 604-5(d) provides in pertinent part that "[t]he district courts shall not have cognizance of real actions, nor actions in which the title to real estate comes in question[.]" Further, District Court Rules of Civil Procedure (**DCRCP**) Rule 12.1 provides:

> **Pleadings.** Whenever, in the district court, in defense of an action in the nature of an action of trespass or for the summary possession of land, or any other action, the defendant shall seek to interpose a defense to the jurisdiction to the effect that the action is a real action, or one in which the title to real estate is involved, such defense shall be asserted by a written answer or written motion, which shall not be received by the court unless accompanied by an affidavit of the defendant, setting forth the source, nature and extent of the title claimed by defendant to the land in question, and such further particulars as shall fully apprise the court of the nature of defendant's claim.

Thus, "[u]nder the plain language of Rule 12.1, an affidavit that raises a defense to the court's jurisdiction must set forth the source, nature, and extent of the title claimed by defendant and further particulars sufficient to fully apprise the court of the nature of defendant's claim." Deutsche Bank Nat'l Tr. Co. v. Peelua, 126 Hawaiʻi 32, 36, 265 P.3d 1128, 1132 (2011)(internal quotation marks omitted).

## A. Constructive Fraud

Here, Scholes/Wong attached a certificate of title to their Complaint for Ejectment, which identifies the Scholes Family Trust as the registered owner. The Hawaiʻi Supreme Court has consistently expressed that "conclusive effect is to be given the certificate of title on the question of title to land." Bank of New York Mellon v. R. Onaga, Inc., __ Hawaiʻi __, __ P.3d __ , 2017 WL 3308219, at *10 (Aug. 3, 2017) (quoting Aames, 107 Hawaiʻi at 101, 110 P.3d at 1048). It is also often stated that "a certificate of title is unimpeachable and conclusive except as otherwise provided by law[.]" In re Bishop Tr. Co., 35 Haw. 816, 825 (Haw. Terr. 1941); see also Waikiki Malia Hotel, Inc. v. Kinkai Props. Ltd. P'ship, 75 Haw. 370, 391, 862 P.2d 1048, 1060 (1993); Honolulu Mem'l Park, Inc. v. City & Cty. of Honolulu, 50 Haw. 189, 192, 436 P.2d 207, 210 (1967).

Notably, however, certain claims of fraud have been recognized as exceptions to the conclusive effect of a

certificate of title.

> If the intent and purpose of the law pertaining to the registration of land titles is to be preserved, the integrity of certificates of title must be scrupulously observed and every subsequent purchaser of registered land who takes a certificate of title for value, except in cases of fraud to which he is a party, is entitled under the provisions of section 5041 to hold the same free from all encumbrances except those noted on the certificate and the statutory encumbrances enumerated. [7]

In re Bishop Tr. Co., 35 Haw. at 825 (emphasis added); see also Aames, 107 Hawai'i at 103-04, 110 P.3d at 1050-51 (analyzing the defendants' argument that under In re Bishop Tr. Co., the conclusive and unimpeachable nature of a certificate of title was qualified where "otherwise provided by law" or "in cases of fraud").

Furthermore, with respect to entry of a new certificate of title, HRS § 501-106(b) (2006) expressly provides:

> §501-106  Entry of new certificate.
>
> . . . .
>
> (b) The new certificate or memorandum shall be binding upon the registered owner and upon all persons claiming under the registered owner, in favor of every purchaser for value and in good faith; provided that in all cases of registration procured by **fraud** the owner may pursue all the owner's remedies against the parties to the **fraud**, without prejudice however to the rights of any innocent holder for value of a certificate of title; and provided further that after the transcription of the decree of registration on the original application any subsequent registration under this chapter procured by the presentation of a **forged deed or other instrument, shall be void**.

(Emphasis added.)  Thus, although certificates of title are generally "conclusive and unimpeachable," certain types of fraud are a valid basis to challenge a certificate of title.

In Aames, like this case, the Hawai'i Supreme Court addressed whether the District Court had jurisdiction over an ejectment action involving property registered in Land Court. 107 Hawai'i at 98-99, 110 P.3d at 1045-46.  The defendants claimed there was a dispute regarding title to the property that divested the District Court of jurisdiction.  Id. at 98, 110 P.3d

---

[7] The reference to "section 5041" in the quote is a reference to Revised Laws of Hawai'i (RLH) § 5041 (1935), which is a predecessor statute to HRS § 501-82 (2006 and 2016 Supp.).

at 1045. The defendants asserted there had been deficiencies in consummating a mortgage, pursuant to which a non-judicial foreclosure on the property had been conducted. Id. at 96, 99, 110 P.3d at 1043, 1046. The Hawai'i Supreme Court held, in relevant part, that the plaintiff's title was conclusive because the defenses to the foreclosure were not raised prior to entry of a certificate of title that followed the foreclosure. Id. at 102-03, 110 P.3d at 1049-50; HRS § 501-118 (2006).

Important to this case, Aames also addressed the fraud exception noted in In re Bishop Tr. Co. On this issue, the Supreme Court stated that "[t]hree types of fraud have been recognized in this jurisdiction in the mortgage context: (1) fraud in the factum, (2) fraud in the inducement, and (3) constructive fraud." 107 Hawai'i at 103, 110 P.3d at 1050 (emphasis added)(citation omitted).[8] After discussing the different types of fraud, the court determined that "the [defendants] do not provide a discernible factual or legal argument in support of their position that the case at bar involves any one of the three types of fraud mentioned." 107 Hawai'i at 104, 110 P.3d at 1051 (citation omitted). Thus, although the Supreme Court held that the fraud exception did not apply in Aames, the court's analysis supports the Kawaguchis' argument that certain fraud claims can challenge the conclusive nature of a certificate of title. See also Takushi v. BAC Home Loans Servicing, LP, 814 F.Supp.2d 1073, 1084 (D. Hawai'i 2011)(recognizing that a defense of fraud could be asserted against a certificate of title, but ruling that the plaintiffs had not alleged or made a showing of fraud).

Here, the Kawaguchis assert that they properly raised an issue regarding title to the property because Kiyoshi's declaration and the Circuit Court complaint assert a constructive

---

[8] Although Aames discusses the types of fraud recognized in the mortgage context, and this case does not involve a mortgage foreclosure, the discussion about fraud in Aames is nevertheless pertinent here. First, no logical basis is apparent that would preclude application of the Aames analysis about fraud to this case. Second, fraud exceptions qualifying the conclusive effect of a new certificate of title are set forth in HRS § 501-106(b).

fraud claim against his mother, Evelyn Scholes, who allegedly made the promise in question and is the Settlor and a Co-Trustee of the Scholes Family Trust (the registered owner of the property), and against Wong, also a Co-Trustee of the Scholes Family Trust in place of her deceased father. "Constructive fraud is characterized by the breach of [a] fiduciary or confidential relationship." Aames, 107 Hawai'i at 104, 110 P.3d at 1051 (citing Honolulu Fed. Sav. & Loan Ass'n v. Murphy, 7 Haw. App. 196, 201 n.6, 753 P.2d 807, 811 n.6 (1988) and Silva v. Bisbee, 2 Haw. App. 188, 190, 628 P.2d 214, 216 (1981)); see also 37 Am. Jur. 2d Fraud and Deceit § 9 (2001) ("Constructive fraud arises on a breach of duty by one in a confidential or fiduciary relationship to another that induces justifiable reliance by the other to his or her prejudice."). The facts attested to in Kiyoshi's affidavit and the allegations in the Circuit Court complaint regarding his claim for "breach of fiduciary duty/constructive trust" are similar to circumstances in other cases where constructive fraud or a constructive trust was recognized.

In Kam Oi Lee v. Fong Wong, 57 Haw. 137, 552 P.2d 635 (1976), Annie Lin Wong died intestate leaving, inter alia, her five children an undivided one-half interest in certain property, and with her surviving husband Ah Poy Wong retaining the other one-half interest in the property. Id. at 138, 552 P.2d at 637. Three of the surviving children brought an action to impose a constructive trust regarding their interests in the property. Id. at 137-138, 552 P.2d at 637. These children alleged that they, along with their other two siblings, had conveyed their interests in the property to their father, Ah Poy Wong, after he asked them to do so and told them he would sell some of the property and give them the proceeds of the sale. Id. at 138, 552 P.2d at 637. Soon after the children conveyed their interests in the property to Ah Poy Wong, he in turn conveyed the property to himself and his new wife. Id. A year later, Ah Poy Wong died and his new wife was left with full title to the property. Id. at 139, 552 P.2d at 637. The trial court held that a

constructive trust existed based on its findings that: there had been a close family tie between Ah Poy Wong and his children and thus a confidential relationship existed between them; due to the confidential relationship, the plaintiffs relied on their father's representations that he would distribute proceeds to them from selling some or all of the property; and Ah Poy Wong failed to carry out his promise. Id.

The Hawai'i Supreme Court affirmed the trial court and recognized that:

> A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. A constructive trust will be imposed if a transfer of land was obtained in an abuse of a confidential relationship.

Id. (citations omitted); see also Teixeira v. Teixeira, 37 Haw. 64, 70-71 (Haw. Terr. 1945) ("The betrayal of trust and confidence is constructively fraudulent and gives rise to a constructive trust."). The court in Kam Oi Lee also ruled that:

> The basic prerequisites for the application for an abuse of confidence constructive trust are: (1) a confidential relationship; (2) conveyance to the grantee based upon, and arising out of a confidential relationship; (3) a promise to hold for, or reconvey to, the grantor or a third person; and (4) a subsequent refusal to reconvey resulting in the grantee's unjust enrichment.

Id. at 140, 552 P.2d at 638 (citations and internal quotation marks omitted).

In Keanu v. Kamanoulu, 20 Haw. 96 (Haw. Terr. 1910), the plaintiffs brought an action against their daughter seeking to cancel a deed they claimed was obtained from them by fraud, and seeking reconveyance to them of the subject property located in Wailuku, Maui. Id. at 96. The evidence showed that plaintiffs had resided on the property for forty-five years, were elderly, and spoke only the Hawaiian language. Id. at 96-97. For many years, plaintiffs held a life interest in the property and their daughter held the fee interest. Id. at 97. Shortly before the deed in question was executed, daughter had represented to plaintiffs that she needed funds to pay off a mortgage on her home in Honolulu, which was about to be foreclosed. Id. Daughter asked plaintiffs to deed the Wailuku

property to her by releasing their life estate interest so that she could obtain a mortgage on that property and raise the funds needed to pay off the mortgage on her Honolulu home. Id. Daughter represented she would not make any other use or disposition of the Wailuku property, and she led plaintiffs to believe they would not be deprived of the use or possession of the property. Id. Plaintiffs, placing confidence in their daughter's representations, executed the deed in question without value or consideration. Id. at 97-98. Soon thereafter, daughter entered a contract with another person to sell the Wailuku property. Id. at 98. The circuit court made numerous findings adverse to the defendant daughter, but concluded that it could give no relief to plaintiffs and thus dismissed their suit. Id. at 98. The circuit court stayed the sale of the property pending an appeal. Id.

On appeal, the Supreme Court of the Territory of Hawai'i held that:

> The questions presented for our consideration are those which concern parties to a transaction between whom there exists that relationship which the law terms confidential. The record before us shows that the relationship between the plaintiffs and the defendant was confidential in fact as well as in law, and that both actual and constructive fraud has been committed in this case.

Id. at 99-100 (emphasis added). The court further expressed:

> By the weight of authority, if a person, by means of a parol promise to reconvey, obtains an absolute conveyance without consideration, or a devise, from one to whom he stands in a fiduciary or confidential relation, a violation of the promise is a constructive fraud, and ground for holding him as a constructive trustee, although there may have been no intention not to perform at the time of the promise.

Id. at 102 (citations omitted). The Supreme Court thus reversed the circuit court's dismissal of the action and remanded the case with directions that the circuit court order a reconveyance of the Wailuku property to plaintiffs. Id.

Here, the Kawaguchis' motion to dismiss the District Court ejectment action, and the attachments thereto, assert a fiduciary relationship existed between Kiyoshi, his mother Evelyn Scholes, and Edward Scholes. Kiyoshi's affidavit and Circuit Court complaint also set forth the request and promise he asserts

was made to him by his mother and Edward Scholes, that if Kiyoshi assisted in making improvements to the home, the property would be given to him in consideration of his contributions toward the property. Kiyoshi claims that he relied on this promise in making significant improvements to the property, including increasing the size of the house from about 900 square feet to nearly 3,000 square feet. He claims his mother and her husband moved to Las Vegas and obtained a loan, secured by the property, to purchase their Las Vegas home. Kiyoshi also claims he screened tenants and rented portions of the subject property, and that he remitted the rental proceeds to his mother. Kiyoshi's verified Circuit Court complaint asserts a claim for "breach of fiduciary duty/constructive trust" and alleges:

> 30. By virtue of their relationship, and the agreement which they had with respect to the Wanaka Street Property, Defendants were in a fiduciary relationship with Plaintiff.
> 31. By not putting Plaintiff back on title after the 2003 re-finance transaction, and threatening to evict Plaintiff and sell the Wanaka Street Property, Defendants violated Plaintiff's trust and breached their fiduciary duties to Plaintiffs.

The registered owner of the property is the Scholes Family Trust. In turn, Evelyn Scholes, who is a purported party to the alleged constructive fraud, is the Settlor and Co-Trustee of the Scholes Family Trust. Based on In re Bishop Trust Co., Aames and HRS § 501-106(b), as well as the cases discussed above regarding constructive fraud and constructive trust, we conclude the Kawaguchis raised a challenge to the property's title sufficient to divest the District Court of jurisdiction. The facts attested to in Kiyoshi's affidavit, the allegations in his Circuit Court complaint, and his claim therein for breach of fiduciary duty/constructive trust, set forth the "source, nature, and extent of the title claimed by defendant[,]" as well as "further particulars sufficient to fully apprise the court of the nature of defendant's claim." Peelua, 126 Hawai'i at 36, 265 P.3d at 1132 (internal quotation marks omitted); DCRCP Rule 12.1. Therefore, the District Court erred when it denied the Kawaguchis' motion to dismiss.

## B. Forgery

In their second motion to continue trial, submitted on on June 29, 2015, the Kawaguchis presented an additional basis for alleging fraud, *i.e.* forgery.[9] In support of this motion, the declarations of the Kawaguchis' attorney, Kemp, were submitted to the District Court. Kemp attested in relevant part that, in the Circuit Court action, she had subpoenaed the notary book for the notary who purportedly had notarized Kiyoshi's signature on the 2003 Warranty Deed, which removed Kiyoshi from title to the property. Kemp attested that upon production of the relevant documents, there was no entry in the notary book related to the 2003 Warranty Deed. Additionally, Kemp attested there was no entry for a mortgage and finance statement purportedly signed by Wong in 2003 as attorney in fact for Evelyn Scholes and Edward Scholes. Kemp attested that Kiyoshi was seeking to amend his Circuit Court complaint to add claims based on forgery.

Kiyoshi's Circuit Court complaint asserted that he was on title to the property prior to the 2003 Warranty Deed. He further asserted that the 2003 Warranty Deed, which removed him from title, conveyed the property to Evelyn Scholes and Edward Scholes and he received no consideration for his interest in the property. Kiyoshi further asserts that in 2005, Evelyn Scholes and Edward Scholes conveyed the property to the Scholes Family Trust. HRS § 501-106(b) provides in part that a new certificate of title "procured by the presentation of a forged deed or other instrument, shall be void." Kemp's declaration regarding potential forgery of Kiyoshi's signature on the 2003 Warranty Deed, along with the existing record in the case, raised another fraud-based claim that could challenge whether the certificate of title held by the Scholes Family Trust is valid. In short, Kiyoshi sufficiently set forth the source, nature and extent of title that he claimed and the particulars to fully apprise the District Court of the nature of his claim. <u>Peelua</u>, 126 Hawai'i

---

[9] "Forgery" is defined as "[a] false or altered document made to look genuine by someone with the intent to deceive[.]" *Forgery*, Black's Law Dictionary, 10th ed. 2014.

at 36, 265 P.3d at 1132; DCRCP Rule 12.1.

We thus conclude that Kiyoshi's assertion of forgery related to the 2003 Warranty Deed, supported by Kemp's declarations and the existing record, provided an additional ground to establish that the District Court lacked jurisdiction in this case.

### IV.  Conclusion

For the reasons set forth above, the Judgment for Possession and the Writ of Possession, both entered on July 15, 2015, in the District Court of the First Circuit, Honolulu Division, are vacated.  This case is remanded to the District Court with instructions to dismiss for lack of subject matter jurisdiction.

On the briefs:

Gary G. Grimmer,
Ann C. Kemp,
for Defendants-Appellants.

John D. Zalewski,
        and
Rodney H. Uchida,
for Plaintiffs-Appellees.